IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

FREDERICK HENRY            *
                                         *
                                         *
              vs.                           *     Civil No. JFM-04-979
                                         *
ROBERT PURNELL           *
                                         *
                                         *****

OPINION

On October 20, 2003, Robert Purnell, a former Deputy Sheriff of Somerset County, Maryland, mistakenly shot Frederick P. Henry with his Glock service pistol instead of his Taser while Henry was attempting to avoid arrest. As the result of this incident, Henry filed suit, claiming that Purnell's conduct violated his right to be free from an unreasonable seizure under the Fourth Amendment and the Maryland Constitution.

After a substantial amount of discovery had been conducted, I denied a motion for summary judgment filed by Purnell. *See Henry v. Purnell*, 428 F. Supp. 2d 393 (D. Md. 2006) ("*Purnell I*"). Simultaneously, I granted a motion to compel filed by Henry for the purpose of obtaining discovery about training Purnell had received in connection with the use of the Taser. *Id.* The Fourth Circuit affirmed my ruling in part, vacated it in part, and remanded the case for further proceedings. *See Purnell v. Henry*, 501 F.3d 374 (4th Cir. 2007) ("*Purnell II*"). Specifically, while agreeing with me that Purnell had "seized" Henry by mistakenly shooting him with his Taser, the court directed me to revisit, after discovery on the training issues had been completed, the question of whether Purnell's seizure of Henry had been constitutionally

"reasonable."[1]  *Id*. at 384.

The necessary discovery has now been finalized, and Purnell has renewed his motion for summary judgment.  For the reasons that follow, the motion will be granted.

I.

As set forth in my initial opinion, the material facts concerning the underlying incident are as follows:

> On October 9, 2003, an arrest warrant was issued for Henry for failing to obey a court order to either pay his child support arrearage or report to a detention center to serve a jail sentence for failure to pay.  On October 20, Purnell went to Henry's last known address in Eden, Maryland, in an attempt to arrest him.  The officer discovered Henry at that address but Henry avoided arrest by lying about his identity.  Soon thereafter, Purnell learned that the man he had talked to was in fact Henry.  Three days later, Purnell noticed Henry in a passing truck, followed him, and pulled into a driveway alongside the truck.  Purnell ordered Henry out of the truck.  Henry complied but fled before he could be handcuffed.  Purnell claims Henry pushed him in the course of escaping; Henry denies that occurred.  In any event, Purnell pulled out a Glock .40 caliber handgun and shot the fleeing Henry in the elbow.  Henry stopped running and was arrested.
>
> The parties have stipulated that Purnell did not intend to shoot Henry with his handgun.  Rather, he intended to unholster and discharge his Taser, a non-lethal device that immobilizes a suspect via an electro-muscular disruption.  The Taser was holstered on Purnell's right side, just below his holstered handgun.  Purnell has testified on deposition that he reached for the Taser because he felt endangered by Henry's actions. He asserts that he thought Henry might be running to get a weapon.
>
> Purnell did not realize he had fired the handgun until after the weapon discharged. He immediately told Henry and another witness at the scene that he

---

[1] The court also indicated that if I were to find that Henry had met his burden of proving that Purnell's actions were unreasonable, Purnell should also be given "the opportunity to demonstrate his entitlement to qualified immunity."  *Purnell II*, 501 F.3d at 384.  I need not reach the qualified immunity question because, for the reasons indicated *infra*, I find that Henry has not met his burden of proving that Purnell's actions were unreasonable.  I note that my finding in this regard is dispositive of Purnell's state claim, as well as his federal claim, because "Articles 24 and 26 of the Maryland Declaration of Rights are construed *in pari materia* to his Fourth Amendment claim."  *Miller v. Prince George's County Maryland*, 475 F.3d 621, 631 n.5 (4th Cir. 2007) (citing *Pickett v. Sears, Roebuck & Co.*, 775 A.2d 1218, 1224 (Md. 2001).  Thus, the fact that Maryland does not recognize qualified immunity for state constitutional violations, *id*., is of no moment in this case.

had not meant to shoot Henry and that he had grabbed the wrong weapon. *Purnell I,* 428 F. Supp. 2d at 394-95.

The supplemental record established by the additional discovery that has been taken on the training issues establishes that Purnell had been certified to use the Taser. (Second Purnell Dep. 15). That certification involved a single class that lasted between three and three and a half hours. (*Id.* at 16.) During the course of that class, Purnell handled the Taser a single time, and fired it once. (*Id.* at 34–41.) There was no instruction on how to fire the Taser at a moving target (*id.* at 41–42), but it was indicated to the trainees that the Taser could be used on a fleeing suspect (*id.* at 43). There was no discussion about on which side an officer should holster his or her Taser. (*Id.* at 18.) There was also no discussion about the possibility of erroneous weapon usage, *i.e.* that an officer might unholster and fire the wrong weapon. (*Id.* at 22.) The Taser itself is "black with yellow stripes" (*id.* at 43), and weighs less than the Glock (*compare* Pl.'s Ex. 3 *with* Pl.'s Ex. 4). The Taser and the Glock both have safety mechanisms, but those mechanisms are in different locations. (*See* Def.'s Ex. 8 at 37; First Purnell Dep. 41.) The decision that Purnell would carry the Taser on his right side, the same side on which he carried his Glock, was made for him by the Sheriff's Department. (Second Purnell Dep. 19.).

II.

The Fourth Circuit's opinion in *Purnell II* made clear that the question I was to decide on remand after additional discovery had been conducted is whether Purnell's use of his Glock was reasonable and therefore not a Fourth Amendment violation. As the Fourth's Circuit's opinion also makes clear, Henry has the burden of proving that Purnell's use of the Glock was unreasonable. *See Purnell II*, 501 F.3d at 377–78; *Bryant v. Muth*, 994 F. 2d 1082, 1086 (4th Cir. 1993).

The Supreme Court has recognized that there is a "need to allow some latitude for honest mistakes that are made by officers in the dangerous and difficult process of making arrests and executing search warrants." *Maryland v. Garrison*, 480 U.S. 79, 87 (1987).  The Fourth Circuit has read this "honest mistake" doctrine broadly in finding that a number of acts committed by police officers are constitutionally reasonable.  For example, in *Mazuz v. Maryland*, 442 F.3d 217 (4th Cir. 2006), the court found that a police officer's mistaken search of the wrong dormitory room that resulted in a brief detention but no physical or other injury was reasonable.  Likewise, in *McLenagan v. Karnes*, 27 F.3d 1002, 1008 (4th Cir. 1992), the court held that an officer's shooting of a person he mistakenly believed to be the person posing a threat was reasonable.

To similar effect is *Milstead v. Kibler*, 243 F.3d 157 (4th Cir. 2001) , which is particularly instructive here.  In *Milstead*, the police officer mistakenly shot and killed an innocent man, who was the victim, rather than the perpetrator, of the crime that the officer had been called to the scene to disrupt.  *Id.* at 163 ("[J]ust as clearly as [the officer] intended to shoot [the perpetrator of the crime] when he came out the door, he clearly did *not* intend to shoot [the victim].") (emphasis in original).  Yet despite the obviously tragic nature of the incident, the question was "whether, in making this mistake, [the officer] violated [the victim's] Fourth Amendment rights."  *Id.*  Ultimately, because the mistaken shooting in *Milstead* was found to be reasonable under the "rapidly evolving circumstances," *id.* at 165, the Fourth Circuit found that the decedent's constitutional rights were not violated when he was shot and killed, *id.* at 160.

In so finding, the Court analyzed two different situations.  *Id.* at 163–164.  In the first situation, an officer, aiming his or her weapon at the actual suspect who presents a legitimate threat, shoots and misses the suspect, but hits an innocent bystander.  *Id.*  Under such

circumstances, there is no constitutional violation because there is no "seizure that implicates the Fourth Amendment." *Id.* at 164 (citing *Brower*, 489 U.S. at 596–97, and *Landol-Rivera v. Cruz Cosme*, 906 F.2d 791, 794–95 (1st Cir. 1990)). In the instant case, it has already been established that a seizure occurred because Purnell intended to detain Henry with his Taser even though he did not intend to shoot Henry with his Glock. *Purnell I*, 428 F. Supp. 2d at 395–96; *Purnell II*, 501 F.3d at 381–82. Thus, the innocent bystander scenario presented in *Milstead* is substantively different from the mistake at issue in this case.

The second scenario outlined by the Court in *Milstead*, however, is more analogous to the instant case. In that second situation, the officer's aim is true and his shot hits its intended target, but it turns out that the intended target was actually an innocent bystander whom the officer "believ[ed], although mistakenly, to be the suspect." *Milstead*, 243 F.3d at 164. In that situation, as here, a seizure has occurred. *Id.* However, also as here, that seizure "is not necessarily unreasonable and therefore in violation of the Fourth Amendment." *Id.*

In *Milstead*, the Court found no Fourth Amendment violation because it concluded that the officer had "probable cause to believe that his use of force was justified", *id.*, under the "rapidly evolving" circumstances, *id.* at 165. In the instant case, it is undisputed that the *intended* use of the force was justified: Purnell had the right to use his Taser to detain Henry, a suspect fleeing arrest. However, the dispositive question is whether, under the circumstances and "filtered through the lens of the officer's perception," *id.* at 164, it was reasonable for Purnell to believe that the weapon he unholstered and fired was the Taser. If that belief was reasonable, Henry has no viable claim. As the *Milstead* Court stated: "[A] mistaken understanding of the facts that is reasonable in the circumstances can render a seizure based on that understanding reasonable under the Fourth Amendment." *Id.* at 165.

It is apparent from the opinion in *Purnell II* that even when, in the Fourth Circuit's view, the underlying facts of the Henry/Purnell incident, viewed most favorably to Henry, do not themselves give rise to an inference that Purnell's use of his Glock was unreasonable. Otherwise, the court would have ruled (as did I) that regardless of additional facts that might be learned from discovery on the training issues, genuine issues of material fact existed as to the reasonableness question. Therefore, I will focus my analysis here upon whether any of the facts (and reasonable inferences therefrom) that have been established during the course of the additional discovery would give rise to a finding of unreasonableness.[2]

As my recitation of facts in this opinion indicates, the training that Purnell received concerning the use of a Taser was quite minimal. During the course of the training, he handled a Taser a single time, and he only fired it once. Moreover, although the record reveals that prior to the training the Taser manufacturer knew of three accidents in which an officer had unholstered and fired the wrong weapon, during the course of the training there was no discussion about the possibility of erroneous weapon usage. Perhaps it might be contended that Somerset County (Purnell's employer) and/or the Taser manufacturer were negligent in not providing greater training. They, however, are not defendants in this action, and nothing in the training that Purnell did receive demonstrates that the mistake he made when he shot Henry with his Glock

---

[2]Citing *Pappas v. New Haven Police Department*, 278 F. Supp. 2d 296 (D. Conn. 2003), and *Sampson v. City of Schenectady*, 349 F. Supp. 2d 336 (N.D.N.Y. 2001), Henry argues that Purnell's training should not be taken into account. Aside from the paradoxical nature of this argument in light of the fact that it was Henry who sought discovery on training issues, the Fourth Circuit's opinion in *Purnell II* obviously deemed facts concerning Purnell's training to be material to the issue of constitutional reasonableness. Moreover, *Pappas* and *Sampson* stand for a proposition entirely irrelevant in this case: that when invoking a qualified immunity defense an officer cannot rely upon improper training that taught him to follow unconstitutional practices.

was anything other than an honest one.[3]

For these reasons, Purnell's motion for summary judgment will be granted. A separate order to that effect is being entered herewith.

Date: <u>June 17, 2008</u>                    /s/_____
                                              J. Frederick Motz
                                              United States District Judge

---

[3]There were two respects in which Purnell's actions may not have complied with the Taser policy of the Somerset County Sheriff's Department. Under the policy an officer was supposed to "[w]hen practical, use verbal commands and point [the Taser's] laser sight at a subject prior to discharging the Taser." (Second Purnell Dep. 11-12 (quoting Sheriff Department's Taser policy).) Purnell used no verbal commands and did not point the laser sight at Henry. Henry, however, was attempting to escape when Purnell shot him, and assuming that under these circumstances it was "practical" to use verbal commands, it is not reasonably inferable from the record that Henry would have complied with those commands (particularly in light of the fact that on a prior occasion, Henry had avoided arrest by lying about his identity). As to the laser sight policy, Henry argues that if Purnell had pointed the laser sight at him, Purnell would have realized that he did not have his Taser in his hands because a Glock has no laser sight. This contention is, however, speculative, particularly in light of the fact that the encounter between Purnell in Henry occurred in broad daylight.

I also note that Purnell has explained the reason that the different safety mechanisms on his Taser and his Glock did not alert him to the fact that he was using his Glock rather than his Taser. When he was employed by the Maryland Department of Natural Resources police before joining the Somerset County Sheriff's office, he was issued a Beretta 92 that operates by a thumb release, just as his Taser did, and that prior to the incident in question he had trained with his Glock on only two occasions. On those occasions he found that he had made the same instinctive thumb motion that he had learned to make with the Beretta. On these facts, it cannot be said that Henry could meet his burden of proof to demonstrate the unreasonableness of Purnell's shooting of him solely on the basis that Purnell should have realized that he did not have his Taser in his hand because of the nature of the safety mechanism.